# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| TERESA C. GERLEMAN, | |
| Plaintiff, | No. 16-CV-210-LRR |
| vs. | **REPORT AND** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | **RECOMMENDATION** |
| Defendant. | |

The claimant, Teresa C. Gerleman (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 201-34, 1601-37. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining that she was not disabled.

For the reasons that follow, I recommend that the District Court **vacate** the Commissioner's decision and **remand** with instructions to more fully develop the record.

## *I.* *BACKGROUND*

I adopt the facts as set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 11). Claimant was born in July 1982, and was therefore thirty-three years old at the time of the ALJ's decision. (AR 30).[1] Claimant has a high school education and some college education; however, she dropped out of college prior to obtaining a degree. (Doc. 11, at 9). The ALJ concluded that claimant is unable to perform past relevant work. (AR 28).

---

[1] "AR" refers to the administrative record below.

On September 18, 2012, claimant protectively filed an application for disability benefits and supplemental security income alleging a disability onset date of June 23, 2012. (AR 10). Claimant had previously filed two applications for benefits under the Social Security Act, both of which were denied, the most recent having been denied on June 27, 2012. As the only denial currently on appeal is the denial of the claim alleging a June 23, 2012 onset date, the remaining claims are of no consequence in my analysis and need not be considered here. The ALJ found that claimant was not disabled within the meaning of the Social Security Act but did suffer from the following severe impairments: various anxiety disorders; depression; Cluster B traits; history of polysubstance abuse and dependence; mild degenerative disc disease of the lumbar spine; and fibromyalgia. (AR 13, 29-30).

The Social Security Administration denied claimant's disability application initially and on reconsideration. (AR 10). On October 7, 2015, ALJ Julie K. Bruntz found claimant was not disabled. (AR 30). Claimant requested timely review of the ALJ's decision, and the Appeals Council denied review on October 26, 2016. (AR 1-4). The ALJ's decision, thus, became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On December 22, 2016, claimant filed a complaint in this Court. (Doc. 3). Between June and July 2017, the parties briefed the issues. (Docs. 14-16). On July 26, 2017, the Court deemed this case fully submitted and ready for decision. On the same day, the Honorable Linda R. Reade, United States District Court Judge, referred this case to the undersigned, United States Magistrate Judge C.J. Williams, for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An

individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(b).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled. Past relevant work is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite [ ] her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. (*Id.*). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about

the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ initially found that claimant met the insured status requirements of the Social Security Act only through June 30, 2015. (AR 13). Thus, claimant may only be eligible for a period of benefits if she establishes a disability onset date of no later than June 30, 2015. (AR 11). 20 C.F.R. § 404.101, *et seq*.

The ALJ made the following findings at each step:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since June 23, 2012, the alleged onset date. (AR 13).

At Step Two, the ALJ found that claimant had the severe impairments of "various anxiety disorders; depression; Cluster B traits; history of polysubstance abuse and dependence; mild degenerative disc disease of the lumbar spine; and fibromyalgia." (AR 13).

At Step Three, the ALJ found that none of claimant's impairments equaled a presumptively disabling impairment listed in the relevant regulations. (AR 14).

At Step Four, the ALJ found claimant had the residual functional capacity to perform sedentary work with the following limitations: "[Claimant could] occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; must avoid concentrated exposures to hazards such as heights or dangerous machinery; only simple, routine tasks; short-lived, superficial contact with the public, coworkers and supervisors." (AR 15). Also at Step Four, the ALJ determined claimant was unable to perform any past relevant work. (AR 28).

At Step Five, the ALJ determined that there were jobs that exist in significant numbers in the national economy that claimant could perform. (AR 29). As a result, the ALJ determined that claimant was not disabled. (AR 29-30).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo," *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186,

188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted).).

## V. DISCUSSION

Claimant argues that the ALJ's residual functional capacity assessment at Step Four was flawed because the ALJ failed to evaluate properly the work-related limitations from both treating physician Dr. Mark Mittauer, M.D. and examining neuropsychologist Dr. Ellie Snavely, Ph.D. (Doc. 14). I will address the adequacy of the ALJ's evaluations of each provider's opinions in turn.

### A. *The ALJ's Evaluation of Dr. Mittauer's Work-Related Limitations*

Claimant argues that the ALJ erred in assigning Dr. Mittauer's opinions little weight. (Doc. 14, at 3-14). Specifically, claimant argues: 1) there are material differences between Dr. Mittauer's work-related limitations and the ALJ's mental residual functional capacity assessment; 2) the medical record supports Dr. Mittauer's limitations; and 3) the ALJ failed to give good reasons for discounting Dr. Mittauer's limitations.

In considering the work-related limitations imposed by Dr. Mittauer, the ALJ noted that the mental impairment questionnaire Dr. Mittauer completed was actually filled out largely by claimant, and the questionnaire as a whole was based on claimant's subjective allegations. (AR 17). Claimant's counsel advised that Dr. Mittauer only

7

completed the final two pages of the questionnaire and merely signed off on the allegations set forth by claimant. (AR 928). Furthermore, in filling out the questionnaire, claimant maintained "extensive symptom endorsement and limitations which were not evident in the treatment record given the consistency of the mental status examinations." (AR 17, 926-35).

Upon my own review of the questionnaire and the attached cover letter, I am persuaded that not only did claimant fill out the first four pages herself, but Dr. Mittauer's handwritten notations on the final two pages evidence having been influenced by claimant's subjective allegations. For instance, Dr. Mittauer asserted that claimant "Last worked June 2012. Quit due to social anxiety [and] pain in many areas of body [and] unable to be around others (especially men) due to anxiety (raped in past)." (AR 934). When asked to "describe any additional reasons . . . why your patient would have difficulty working at a regular job on a sustained basis," Dr. Mittauer responded, in part, "Also physical limitations. (*client states* she is unable to bend, stoop, walk more than 10 minutes, stand more than 10 minutes, or twist/turn/bend[)]." (AR 935 (emphasis added)). It is significant that Dr. Mittauer noted that claimant stated her own inabilities, as this indicates that Dr. Mittauer failed to acknowledge these limitations on his own. Although the medical evidence of record does not clearly indicate the date on which Dr. Mittauer began treating claimant, the earliest treatment evidence apparent is a note written on a prescription pad bearing the date August 19, 2013. (AR 906). This is, of course, long after the date on which claimant "[l]ast worked." (AR 934). Absent evidence showing that Dr. Mittauer did actually treat claimant in June 2012 and is, therefore, able to attest to her inability to work at that time, I must agree with the ALJ that Dr. Mittauer's assertions in the questionnaire were influenced by claimant's subjective allegations. (AR 27). Thus, I find that the ALJ acted properly in according the opinions in the questionnaire "little weight." (AR 17).

With respect to consistency between the limitations imposed by Dr. Mittauer and the medical record, I find no error. The ALJ details, at length, the numerous abilities relayed by claimant that are inconsistent with Dr. Mittauer's limitations:

> The claimant was allegedly afraid of men, yet she only went out with her friend who was male. The claimant testified that she was in constant pain, yet she was able to independently care for her son, including playing with him. Further, the claimant was able to perform household chores and prepare hot meals. In addition, it was noted that the claimant quit several jobs due to her anxiety, but she was hesitant to engage in therapy to try to cope with her issues. Further, the claimant reported that her anxiety interfered with her ability to attend a family Christmas party, however, it was emphasized that her anxiety had not stopped her from her social life in the extent of seeing her friends. (AR 824). Despite the allegations of severe anxiety and debilitating pain, the claimant was routinely described as alert, oriented, pleasant and cooperative and in no distress. . . . In addition, examining sources clearly indicated that the claimant's allegations were vastly out of proportion with the objective findings and, in conjunction with the frequently stated focus of obtaining disability benefits, the undersigned has further raised the question of secondary gain.

(AR 25, 57-58, 65-66, 106, 117-20). Upon my own review of the record, including the ALJ's findings, the hearing transcripts, and the voluminous medical records, I conclude that the ALJ could properly determine that the limitations Dr. Mittauer imposed were inconsistent with the medical record as a whole. Given that claimant acknowledged on her own that her capabilities surpassed the limitations imposed by Dr. Mittauer, the ALJ's conclusion is supported by substantial evidence on the record as a whole. It is of no consequence that this Court might have decided the issue differently. Rather, because substantial evidence on the record as a whole could support the ALJ's conclusion, this Court must defer to the ALJ's finding that the limitations imposed by Dr. Mittauer were inconsistent with the record as a whole. *Kluesner*, 607 F.3d at 536; *Culbertson*, 30 F.3d at 939; *Baker*, 730 F.2d at 1150.

Finally, I must agree with claimant that there are material differences between the ALJ's residual functional capacity assessment and Dr. Mittauer's limitations. However,

9

what claimant fails to acknowledge is that such material differences are inherent when the ALJ finds it appropriate to afford less than controlling weight to a treating provider's opinions and, thus, imposes different limitations as a result of not deferring to the provider's recommendations. As detailed above, Dr. Mittauer's evaluations were inconsistent with the substantial evidence on the record as a whole; as such, Dr. Mittauer's opinions were not entitled to controlling weight even though he was an examining source. *Reed v. Barnhart*, 399 F.3d 917, 920-21 (8th Cir. 2005). I further find that the ALJ's laborious detail of claimant's admitted abilities and discussion of the remaining medical evidence provides a strong basis for discrediting Dr. Mittauer's opinions. Therefore, I cannot agree with claimant's arguments that the ALJ improperly imposed materially different limitations than those imposed by Dr. Mittauer, that Dr. Mittauer's limitations are sufficiently supported by the medical evidence, or that the ALJ failed to adequately describe her reasons for discrediting Dr. Mittauer's opinions.

### B. *The ALJ's Evaluation of Dr. Snavely's Work-Related Limitations*

Claimant argues that the ALJ erred in discrediting the work-related limitations imposed by Dr. Snavely, that Dr. Snavely's testing affirms the limitations imposed by Dr. Mittauer, and that the consistency between Dr. Mittauer's and Dr. Snavely's opinions in assessing claimant with disabling limitations warrants reversal.

It is first essential to point out that Dr. Snavely did not impose any limitations, work-related or otherwise. (AR 1039-46). Dr. Snavely's report was limited to a review of test results as well as her impressions. (*Id.*). Most notably, Dr. Snavely opined that "Psychometric assessment of mood status suggests current moderate recurrent major depressive disorder, and very severe generalized anxiety with panic, social phobia, and the physiological correlates of anxiety. Apparently, this is minimally responsive to treatment at this time since the symptoms remain so elevated," and "Personality assessment is consistent with the finding of avoidant personality disorder with schizoid, compulsive and paranoid personality traits. . . . [A] diagnosis of pain disorder with psychological factors is indicated as well." (AR 1045). Although these findings are

consistent with Dr. Mittauer's findings, Dr. Snavely did not go so far as to assess claimant with "disabling limitations" as claimant argues. (Doc. 14, at 16). Rather, Dr. Snavely provided well-supported opinions but declined to comment on whether these opinions necessitated limited functioning or an inability to work. As such, I reject claimant's arguments that the ALJ erred in discrediting the non-existent work-related limitations imposed by Dr. Snavely and that the ALJ failed to acknowledge the disabling limitations imposed by Dr. Snavely.

I turn now to whether Dr. Snavely's testing provided support for Dr. Mittauer's findings and the limitations imposed by Dr. Mittauer. I find that Dr. Snavely's testing did provide such support; as claimant now argues, the ALJ applied a very similar rationale in rejecting Dr. Snavely's conclusions as the rationale applied in rejecting Dr. Mittauer's conclusions. However, in applying the same rationale to both Dr. Snavely's opinions and Dr. Mittauer's opinions, the ALJ failed to acknowledge a crucial difference. Dr. Mittauer's opinions were strongly influenced by claimant's subjective allegations and no additional objective testing is evidenced on the record, other than that done by Dr. Snavely. Thus, Dr. Mittauer's findings could properly be discounted as having been significantly influenced by claimant's subjective allegations. Dr. Snavely, however, conducted extensive objective testing in addition to hearing claimant's subjective complaints. Thus, Dr. Snavely's opinions merely incorporated claimant's subjective complaints but were not substantially based on claimant's subjective complaints, as Dr. Mittauer's opinions were.

Further, the ALJ relied on claimant's statements as to her daily activities, which were included in Dr. Snavely's report, in assessing Dr. Snavely's opinions. (AR 18). In doing so, the ALJ improperly failed to recognize that these statements of daily activities, which certainly evidenced some functional ability, were already incorporated into Dr. Snavely's opinions. In other words, Dr. Snavely knew of claimant's admitted daily activities and still found that claimant suffered from certain conditions. Dr. Snavely did not conclude her assessment without first considering evidence that would contradict

11

her opinions. Following a consideration of such evidence, Dr. Snavely's opinion was that claimant did suffer from several conditions. To allow the ALJ to consider claimant's statements as to her daily activities again, in addition to Dr. Snavely's consideration of those very statements, would result in those statements being assessed against claimant twice. A disability determination is not supported by substantial evidence when some evidence is doubly counted against a claimant.

The ALJ provided a thorough description of Dr. Snavely's testing but failed to independently incorporate Dr. Snavely's findings into the disability determination. Rather, Dr. Snavely's findings were discredited in the same manner as Dr. Mittauer's findings, even though a different rationale would have been applicable in dismissing each set of findings. Therefore, I find that the ALJ should have more adequately discussed why Dr. Snavely's opinions were discredited. Merely stating the "fairly descriptive manner of the ways in which [claimant] occupied her time," as related by claimant to Dr. Snavely, is an insufficient basis on which to reject Dr. Snavely's findings. (AR 18). Dr. Snavely acknowledged claimant's subjective complaints but did not summarily accept them; Dr. Snavely considered these subjective complaints but in no way accepted claimant's complaints as her own findings. It would appear that the ALJ intended to reject Dr. Snavely's findings as inconsistent with the record as a whole, but the ALJ did not delve deeply enough into Dr. Snavely's findings for this Court to find the record supports such a conclusion. 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). *See Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016) ("superficial references" to a treating source's findings were insufficient to satisfy the requirement 'that the ALJ always give good reasons' for the weight afforded to a treating [source's] evaluation" (citations and internal quotation marks omitted)). Absent a more legitimate basis for dismissing Dr. Snavely's findings, I am unconvinced that the ALJ gave careful consideration to claimant's disability claim such "that a reasonable mind

might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted).

## VI.   CONCLUSION

For the reasons set forth herein, I find that the ALJ failed to provide good reasons for the weight afforded to Dr. Snavely's findings. *Lewis*, 353 F.3d at 645. Therefore, I respectfully recommend that the District Court **vacate** the ALJ's decision and **remand** with instructions to more fully develop the record.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 11th day of September, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa